24 C.C.P.A.(Patents)

## CHRISTMANN v. DERBY et al.
### Patent Appeal No. 3721.

Court of Customs and Patent Appeals.
Feb. 1, 1937.

Robert Ames Norton, of New York City, for appellant.

Horace A. Dodge, of Washington, D. C. (Ivan P. Tashof, of Washington, D. C., of counsel), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention upon the three counts in issue to appellees. Appellant has brought before us for review the decision of the Board of Appeals.

The interference involves an application filed by appellees on February 24, 1931, Serial No. 518,019, stated in the application to be a division of "our copending application Ser. No. 96,061, filed March 19, 1926," and an application filed by appellant on November 22, 1927, Serial No. 235,121.

The counts involved read as follows:

"1. An agent for use in flotation, comprising the reaction product of an alcohol, an aromatic amino compound and phosphorus pentasulphide.

"2. An agent for use in flotation, comprising the reaction product of an alcohol, an aromatic amino compound, sulphur and phosphorus.

"3. The process of concentrating ores by froth flotation which comprises subjecting the ore in the form of a pulp to a flotation operation in the presence of the reaction product of an alcohol, an amino compound and phosphorus pentasulphide."

The invention relates to improvements in ore flotation, and it will be observed that the first two counts embrace products and the third count embraces a process of concentrating ores by froth flotation.

In declaring the interference the examiner held that appellees were entitled to the filing date of their original March 19, 1926, application, No. 96,061, for conception and reduction to practice.

When appellant's preliminary statement was opened, it was found that he alleged conception and reduction to practice of the invention on or about May 17, 1927. This date being subsequent to the filing date of appellees' earlier application, the Examiner of Interferences issued an order to appellant to show cause why judgment on the record should not be entered against him. In response to this order appellant moved to dissolve the interference upon the ground that appellees did not disclose the invention in issue in their application in interference, and also filed a motion to shift the burden of proof upon the ground that (1) the original application of appellees, No. 96,061, did not disclose the invention in issue, and (2) that there was a lack of continuity in the subject matter of appellees' application in interference and their original application.

Both motions were decided adversely to appellant by the examiner, and judgment

upon the record was rendered by the Examiner of Interferences awarding priority of invention to appellees upon all the counts involved.

Upon appeal to the Board of Appeals, apparently the only ground urged by appellant for reversing the decision of the Examiner of Interferences was the contention that the original application of appellees, No. 96,061, did not support the counts in issue. The board held that it did support the counts and affirmed the decision of the Examiner of Interferences. · From such decision this appeal was taken, and the only question presented to us is whether or not the original application of appellees, No. 96,061, discloses the invention embraced in the counts before us.

In said original application we find the following:

"More particularly, our present invention embraces the products of reaction of phosphorus sulfides (such as the trisulfide. $P_2S_3$, or pentasulfide, $P_2S_5$), with inorganic, organic or both inorganic and organic substances and compounds, and the use of such substances, as well as the phosphorus sulfides themselves, in ore flotation. Although we do not limit ourselves to these 'phosphorus nuclear compounds,' they are particularly emphasized because the phosphorus sulfides are easily ·prepared, and readily react with a large variety of substances both inorganic, and organic, thus forming excellent starting materials for the production of 'nuclear phosphorus compounds' containing sulfur.

"We give the following classification of some of the reactions that yield 'nuclear phosphorus compounds' which can conveniently be employed in ore flotation in accordance with ·the present invention, namely, the reaction of a phosphorus sulfide such as phosphorus pentasulfide, $P_2S_5$, with (a) phenolic compounds, such as carbolic acid or its homologues; or the alkali salts of phenols such as potassium phenolate or sodium cresylate or the like; (b) the alcohols, such as methyl or ethyl alcohol; or the alkali salts of alcohols such as sodium ethylate; (c) the mercaptols, for example, ethyl mercaptol; or the alkali salts of mercaptol, such as the sodium or potassium salts of ethyl mercaptol; (d) the aromatic mercaptols, and their alkali salts, for example, phenyl mercaptol; (e) aliphatic and aromatic basis, including such substances as ethylamine, aniline or its homologues or other aromatic basis, such as pyridine, quinolin, etc.; (f) the nitriles, for example benzontrile; (g) hydrocarbonaceous substances, for example, naphthalene, phenanthrene, coal tar oils, and vegetable oils and (g) inorganic compounds such as the alkali hydroxides, ammonium hydroxide, the alkali sulfides, the alkali cyanides, the halogens, etc."

The specification proceeds to give five examples of phosphosulfo compounds, in four of which phosphorus pentasulfide is reacted with elements of a single group of the groups classified in the specification as (a), (b), (c), (d), (e), (f), and (g). In the fifth example a reaction is set out between phosphorus pentasulfide and naphthalene [named in group (g)] and sodium alcoholates [named in group (b)] or phenolic compounds [named in group (a)]. No example is given of a reaction between phosphorus pentasulfide and alcohol plus an amino compound, the last element being named in group (e).

The examiner held that the counts before us did not require a reaction between the alcohol and the other elements named in each of the counts. In his decision he stated:

"The specification of the earlier Derby et al. application at no point states definitely in precise words that there may be used the reaction product of an alcohol, an amine, and phosphorus pentasulphide. The failure to definitely state in exact words does not prevent the application being sufficient to teach one skilled in the flotation art that such a compound is useful for flotation purposes.

"These claims are not specific in nature. The counts call for the use in flotation of the product of the reaction, conducted under any conditions, of any alcohol, and of any amine, with phosphorus pentasulfide. The nature of the product is not defined, it is not essential that there be the result of the mutual reaction of the alcohol and amine with phosphorus pentasulfide. The alcohol may serve purely as a solvent. As illustrated in the Wigton patent the alcohol is used purely as a solvent for the reacting amino compound and the phosphorus pentasulfide."

The Board of Appeals did not agree with the examiner in this statement and held that the counts are not satisfied by the presence of alcohol purely as a solvent. We agree with the board in this conclusion.

However, we find in the decision of the board the following:

"The appellee in his brief calls attention to numerous statements made in the early application, 96,061, the first of these being a statement that phosphorus pentasulphide may be reacted with certain classes of compounds. The specification lists eight such classes. Later, page 3, last paragraph, and the top of page 4, the specification says:

" 'Generally stated it is sufficient to select the desired organic compound, and to react thereupon with phosphorus pentasulfide or other sulfide of phosphorus, or even with a mixture of phosphorus and sulfur, or in some cases with phosphorus and sulfur separately in either order, the reaction being performed in a ·suitable container, and at a temperature sufficiently high to cause reaction to take place. In many cases it has been found advisable to employ· a ·mixture of compounds, some of which apparently function as solvents, and may also function as both solvents and reacting materials.'

"As we read this quotation, it instructs the worker in the art to react any compound from the groups previously given with phosphorus pentasulphide or to react mixtures of compounds in the same manner. The mixtures referred to are to include some compounds which function as solvents or as both solvents and reacting materials. In the paragraph quoted, reference is made to the use of a temperature sufficiently high to cause reaction to take place and obviously the capability of the solvent of also reacting would have been immaterial had it not been intended to cause the same to enter into, reaction.

"As the examiner says, this paragraph does not definitely teach reaction of the particular materials involved in the claims. However, we think it would be unreasonable to require one in an application of this kind, which involves the reaction of numerous materials in various relations, to specifically disclose all of the possible permutations and combinations suggested. It seems to us, where a general statement is made, such as above quoted, that comprehends and fairly teaches a specific material such as here involved, that adequate support is furnished for the making of a claim directed to such material."

Preceding the five examples given the specification states: "For the preparation of the phosphosulfo compounds referred to we give the following specific examples:"

Example 2 sets out the reaction of phosphorus pentasulfide with ethyl alcohol. Example 5 sets out the reaction of naphthalene, a hydrocarbonaceous substance, with pentasulfide, and the reaction of this product with sodium or potassium alcoholates or phenolic compounds. Thus it will be seen in this example that two compounds named in the list of compounds are reacted with phosphorus pentasulfide.

Following the examples given in the specification it is stated: "The general procedure indicated in the above examples may be applied in chemically combining phosphorus pentasulfide with *any* of the compounds included in the classification outlined in the early part of this specification. * * *" (Italics ours.)

According to dictionary definitions, the word "any" may mean one or more than one, according to the context. We think the context in the specification, in view of the examples given and the general statement that more than one compound may be employed, indicates that the word "any" was used in the sense of any one or more than one, and with this view we are in agreement with the statement of the Board of Appeals that the specification teaches the worker in the art that any compound previously named in the specification may be reacted with phosphorus pentasulfide, or mixtures of the compounds may be reacted in the same manner as single compounds are reacted. We therefore conclude that the application of appellees, No. 96,061, disclosed the invention embraced in the counts here in issue.

Appellant relies largely upon our decision in the case of In re Collins, 75 F.(2d) 1000, 22 C.C.P.A. (Patents) 1053, wherein it was held that the application there involved did not disclose an invention embraced in claims copied from a patent. The question involved was whether the application disclosed a combination of an organic polybasic acid and two or more alcohols. We approved a holding of the Board of Appeals that the various alcohols named in the specification were treated as equivalents, and that the specification disclosed only that any one of them might be substituted for those specifically mentioned in the examples set out in the specification. There was no example of the use of two or more alcohols.

In other words, there was no disclosure in the specification of combining two or more alcohols with an organic polybasic acid. The distinction between that case and the case at bar is apparent, holding as we do that the disclosure in appellees' application No. 96,061 does embrace the reaction between two or more of the compounds named therein and phosphorus pentasulfide.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.